1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   GUILLERMINA R.,[1]                           Case No. 5:19-cv-02315-AFM

12                        Plaintiff,

13            v.                               **MEMORANDUM OPINION AND
                                              ORDER AFFIRMING DECISION
14   ANDREW SAUL,                             OF THE COMMISSIONER**
     Commissioner of Social Security,
15

16                        Defendant.

17

18        Plaintiff filed this action seeking review of the Commissioner's final decision

19   denying her application for disability insurance benefits. In accordance with the

20   Court's case management order, the parties have filed memorandum briefs

21   addressing the merits of the disputed issues. The matter is now ready for decision.

22                                **BACKGROUND**

23        In April 2016, Plaintiff applied for disability insurance benefits, alleging

24   disability since November 1, 2015. Plaintiff's application was denied initially and

25   upon reconsideration. (Administrative Record ["AR"] 80-84, 87-92.) A hearing took

26   place on November 27, 2018 before an Administrative Law Judge ("ALJ"). Plaintiff

27   _____

     [1]   Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure
28   5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
     Management of the Judicial Conference of the United States.

1    (who was represented by counsel) and a vocational expert ("VE") testified at the

2    hearing. (AR 31-53.)

3        In a decision dated December 12, 2018, the ALJ found that Plaintiff suffered

4    from the following severe impairments: degenerative disc disease of the lumbar and

5    cervical spine, obesity, anxiety, and depression. (AR 17.) After concluding that

6    Plaintiff's impairments did not meet or equal a listed impairment, the ALJ assessed

7    Plaintiff's residual functional capacity ("RFC") as retaining the capacity to:

8            perform light work as defined in 20 CFR 404.1567(b) except she can

9            occasionally climb, stoop, kneel, crouch, and crawl. She can frequently

10           reach, handle, finger, and feel. She should avoid concentrated exposure

11           to extreme cold, and work at heights or around hazards. She is capable

12           of simple, routine tasks with occasional interaction with supervisors,

13           coworkers and the public.

14   (AR 19.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could

15   not perform her past relevant work, but could perform jobs that exist in significant

16   numbers in the national economy – including housekeeping cleaner, cafeteria

17   attendant, and dry cleaner. (AR 23-24.) Accordingly, the ALJ concluded that Plaintiff

18   was not disabled. (AR 25.)

19       The Appeals Council subsequently denied Plaintiff's request for review (AR

20   1-6), rendering the ALJ's decision the final decision of the Commissioner.

21                           **DISPUTED ISSUES**

22       1.  Whether the ALJ's hypothetical properly incorporated limitations on

23           Plaintiff's ability to stand and walk.

24       2.  Whether the ALJ erred by failing to discuss Plaintiff's physical therapy

25           records.

26       3.  Whether the ALJ properly rejected Plaintiff's subjective complaints.

27   ///

28   ///

                                    2

1

**STANDARD OF REVIEW**

2      Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to

3 determine whether the Commissioner's findings are supported by substantial

4 evidence and whether the proper legal standards were applied. *See Treichler v.*

5 *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Under the

6 substantial evidence standard, this Court asks whether the administrative record

7 contains sufficient evidence to support the Commissioner's factual determinations.

8 *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). As the Supreme Court

9 observed in *Biestek*, "whatever the meaning of 'substantial' in other contexts, the

10 threshold for such evidentiary sufficiency is not high." *Id*. It means "more than a

11 mere scintilla" but less than a preponderance, and is "such relevant evidence as a

12 reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

13 *Perales*, 402 U.S. 389, 401 (1971). This Court must review the record as a whole,

14 weighing both the evidence that supports and the evidence that detracts from the

15 Commissioner's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

16 2007).  Where evidence is susceptible of more than one rational interpretation, the

17 Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th

18 Cir. 2007).

19

**DISCUSSION**

20 **I.      The ALJ's RFC incorporated limitations on walking/standing.**

21      Plaintiff argues that the ALJ erred in determining an RFC without explicitly

22 including a limitation on her ability to stand/walk. (ECF No. 18 at 6-7.)

23      Plaintiff underwent an orthopedic consultative examination with Vicente R.

24 Bernabe, D.O., on August 30, 2016. (AR 269-273.) Based on his physical

25 examination and his review of Plaintiff's available medical records, Dr. Bernabe

26 opined that Plaintiff would be capable of performing the full range of medium

27 exertion work, including the ability "to walk and stand six hours out of an eight-hour

28 day." (AR 273).

1    The ALJ considered Dr. Bernabe's opinion, but determined that it did not fully

2    account for Plaintiff's pain and other conditions. Instead, the ALJ adopted a more

3    restrictive RFC, limiting Plaintiff to a range of light work. (AR 19.) During the

4    administrative hearing, the ALJ asked the VE a hypothetical regarding an individual

5    of Plaintiff's age, education, and past work (AR 50) with the following RFC:

6    the individual can perform light work, occasionally climb, stoop, kneel,

7    crouch, and crawl, frequently reach, handle, finger, and feel; avoid

8    concentrated exposure to extreme cold, work at heights, or work around

9    hazards, limited to simple routine tasks and occasional interaction with

10   supervisors, coworkers, and the public.

11   (AR 51-52.) [2]

12   Plaintiff contends that the hypothetical and RFC were deficient because the

13   ALJ failed to explicitly incorporate Dr. Bernabe's limitation to standing/walking six

14   hours in an eight-hour day. (ECF No. 18 at 6-7.) Essentially, Plaintiff argues that an

15   RFC of light work contemplates standing/walking in excess of six hours in an eight-

16   hour day and, therefore, is inconsistent with a standing/walking limitation. For the

17   following reasons, the Court finds Plaintiff's argument unpersuasive.

18   In pertinent part, Social Security Ruling ("SSR") 83-10 provides that the "full

19   range of light work requires standing or walking, off and on, for a total of

20   approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during

21   the remaining time." *See* 1983 WL 31251, at *6. Relying on SSR 83-10, courts have

22   found that an ALJ's reference to "light work" or "medium work"[3] is widely

23   understood to encompass the limitation to stand/walk for six hours in an eight-hour

24   

25   [2] As mentioned above, the VE testified that such an individual could not perform any of Plaintiff's
     past work, but could perform the occupations of housekeeping cleaner (DOT 323.687-014),
26   cafeteria attendant (DOT 311.677-010), and dry cleaner (DOT 589.685-038). (AR 52.)

27   [3] Like the definition of light work, SSR 83-10 provides that "medium work requires standing or
     walking, off and on, for a total of approximately 6 hours in an 8-hour workday ..." *See* 1983 WL
28   31251, at *6.

4

1   day. *See Christopher P. v. Saul*, 2020 WL 551596, at *3 (C.D. Cal. Jan. 31, 2020)

2   (ALJ's reference to medium work in hypothetical sufficiently captured the plaintiff's

3   RFC limitations to standing or walking for six hours in an eight-hour workday); *Mitzi*

4   *D. v. Saul*, 2019 WL 8112507, at *2 (C.D. Cal. Dec. 13, 2019) ("Given that SSR 83-

5   10 has been in play for over thirty years, there is no reason to think the VE understood

6   light work to encompass anything other than approximately six hours of standing or

7   walking."); *James T. v. Saul*, 2019 WL 3017755, at *2 (C.D. Cal. July 10, 2019)

8   ("[T]he ALJ's reference to medium work [in the RFC] supplied a 6-hour limitation

9   on walking and standing, and the ALJ did not pose an incomplete hypothetical to the

10   VE."); *Goodman v. Berryhill*, 2017 WL 4265685, at *8 (W.D. Wash. Sept. 25, 2017)

11   (rejecting argument that RFC was deficient because it failed to include a restriction

12   to standing/walking 6 out of 8 hours, finding "such a restriction is part and parcel of

13   the definition of 'light work'"), *aff'd*, 741 F. App'x 530 (9th Cir. 2018).

14        Plaintiff objects to this conclusion, insisting that SSR 83-10 does not

15   incorporate a limitation to six hours of walking/standing. According to Plaintiff, the

16   sentence "[s]itting may occur intermittently during the remaining time," implies that

17   some standing must occur in the remaining two hours of the workday. The Court

18   rejects that reading of SSR 83-10. While SSR 83-10 may not be perfectly written, the

19   Court joins other courts in interpreting the language "standing or walking, off and

20   on, *for a total* of approximately 6 hours of an 8-hour workday" as encompassing the

21   limitation to standing/walking for six hours in an eight-hour workday. *See* 1983 WL

22   31251, at *5 (emphasis supplied); *Roberto H.P. v. Saul*, 2020 WL 4286877, at *7

23   (C.D. Cal. July 27, 2020) (rejecting argument that SSR 83-10 contemplates the ability

24   to stand/walk for more than six hours because it provides that sitting may occur

25   "intermittently" during remaining time and observing that "[t]ellingly, Plaintiff does

26   not cite a single case to support his view"); *James T.,* 2019 WL 3017755, at *2

27   ("ALJs ... with experience conducting social security disability benefits hearings

28

1    have understood medium work as requiring the ability to stand or walk for *up to 6*

2    *hours*.") (emphasis added).

3          In her reply, Plaintiff also argues that SSR 83-10 is "incompetent to interpret

4    or construe the DOT." (ECF No. 22 at 3-4.) Contrary to Plaintiff's position, the Ninth

5    Circuit has endorsed relying on SSR 83-10 to determine the standing and walking

6    requirements of different exertional categories of work. *See Aukland v. Massanari*,

7    257 F.3d 1033, 1035-1036 (9th Cir. 2001); *Macri v. Chater*, 93 F.3d 540, 546 (9th

8    Cir. 1996); *see James T.*, 2019 WL 3017755, at *2 (rejecting argument that "SSR 83-

9    10 is not entitled to deference because it is inconsistent with 20 C.F.R. § 404.1567(c)

10   and does not implicate the Commissioner's expertise," noting that the Ninth Circuit

11   has endorsed reliance on SSR 83-10 with respect to standing/walking requirements).

12         In light of the foregoing, the Court concludes that by limiting Plaintiff to light

13   work, the ALJ fairly incorporated the limitation to walking/standing for a total of six

14   hours in an eight-hour workday. It follows that the hypothetical to the VE was

15   complete, and the ALJ could properly rely upon the VE's testimony to conclude that

16   there are occupations existing in significant numbers that Plaintiff could perform.

17   **II.      The ALJ did not err with respect to Plaintiff's physical therapy records.**

18         Plaintiff argues that reversal is warranted because the ALJ "did not summarize,

19   reject, or state any germane reasons for rejecting the physical therapy findings." (ECF

20   No. 18 at 7-8.) In support of this argument, Plaintiff points out that physical therapy

21   records described Plaintiff's gait as "severely antalgic" in March 2016, "mildly

22   antalgic" in April 2017, and "mild limping" in October 2018. (ECF No. 18 at 7; citing

23   AR 537, 471, 528.)

24         As an initial matter, the legal basis for Plaintiff's claim is unclear. Plaintiff

25   cites *Tadevosyan v. Holder*, 743 F.3d 1250, 1252-1253 (9th Cir. 2014), and *Tobeler*

26   *v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014). Neither case, however, addresses an

27   ALJ's obligation to address physical therapy notes such as the ones identified by

28   Plaintiff. Indeed, the law is to the contrary. An ALJ "is not required to discuss every

1    piece of evidence." *Toulou v. Saul*, 796 F. App'x 945, 946 (9th Cir. 2020) (citing

2    *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)); *see Howard v. Barnhart*, 341

3    F.3d 1006, 1012 (9th Cir. 2003) ("the ALJ does not need to discuss every piece of

4    evidence," and the "ALJ is not required to discuss evidence that is neither significant

5    nor probative") (citation and quotation marks omitted).

6          Moreover, the ALJ did discuss the physical therapy records to which Plaintiff

7    refers. Specifically, the ALJ cited the evidence and observed that "the record reveals

8    [Plaintiff] was referred to physical therapy in March 2016, April 2017, and again in

9    October 2018 (see [AR 527, 531, 536]), but testified that she just started physical

10   therapy three weeks prior to the hearing. This would suggest that [Plaintiff]'s

11   symptoms might not have been as limiting as" she had alleged. (AR 21.)

12   **III.   The ALJ provided legally sufficient reasons for her credibility**

13   **        determination.**

14         Plaintiff contends that the ALJ erred in discounting her testimony regarding

15   her subjective symptoms and limitations. (ECF No. 18 at 8-9.) The Court disagrees.

16         **A.    Plaintiff's Testimony**

17         At the hearing, Plaintiff testified that she was unable to work because of back

18   pain. (AR 37.) The pain is in her low back and extends to her knees. (AR 39-40.)

19   According to Plaintiff, she cannot stand up or sit down because of the pain. (AR 41.)

20   She estimated that she could sit for about 20 minutes at a time before needing to stand

21   up and she could stand for about half an hour at a time before needing to sit down.

22   (AR 48-49.) Plaintiff takes Tylenol and Norco for the pain. On average, she takes

23   medication for pain about twice a day. (AR 41.) She did not use anything to help her

24   walk. (AR 42.)

25         Plaintiff also testified that she has "a lot of pain in [her] hands," but admitted

26   that she had not told any physician about the pain in her hands and had not received

27   treatment for her hands. (AR 40-41.)

28         Finally, Plaintiff testified that she experienced "a lot of anxiety and

7

1   depression." (AR 42.) She takes medication for anxiety and depression, which
2   sometimes helps. (AR 42.) Plaintiff said that the medication sometimes caused
3   dizziness. She was not sure which medication caused the dizziness and she had not
4   reported the dizziness to her doctors. (AR 43.)

5       **B.      Relevant Law**

6       Where, as here, a claimant has presented objective medical evidence of an
7   underlying impairment that could reasonably be expected to produce pain or other
8   symptoms and the ALJ has not made an affirmative finding of malingering, an ALJ
9   must provide specific, clear and convincing reasons before discrediting a claimant's
10  testimony about the severity of his symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678
11  (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)).
12  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ
13  must identify what testimony is not credible and what evidence undermines the
14  claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)
15  (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings
16  "must be sufficiently specific to allow a reviewing court to conclude the adjudicator
17  rejected the claimant's testimony on permissible grounds and did not arbitrarily
18  discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d
19  487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th
20  Cir. 1991) (en banc)).

21      Factors an ALJ may consider include conflicts between the claimant's
22  testimony and the claimant's conduct – such as daily activities, work record, or an
23  unexplained failure to pursue or follow treatment – as well as ordinary techniques of
24  credibility evaluation, such as internal contradictions in the claimant's statements and
25  testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition,
26  although an ALJ may not disregard a claimant's testimony solely because it is not
27  substantiated by objective medical evidence, the lack of medical evidence is a factor
28  that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400

1    F.3d 676, 680-681 (9th Cir. 2005).

2        **C.      Analysis**

3        The Commissioner argues that the ALJ's determination is supported by the

4    following legally sufficient reasons: Plaintiff's subjective complaints were (1) not

5    supported by the objective medical record; (2) inconsistent with her sporadic and

6    conservative treatment; (3) inconsistent with her failure to pursue physical therapy;

7    (4) inconsistent with the medical evidence showing that treatment was generally

8    successful in controlling her mental health symptoms; and (5) inconsistent with her

9    daily activities. (ECF No. 21 at 4-8.)[4]

10            Not consistent with the medical evidence

11       "Although lack of medical evidence cannot form the sole basis for discounting

12   pain testimony, it is a factor that the ALJ can consider in his credibility analysis."

13   *Burch*, 400 F.3d at 681; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

14   1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's

15   subjective complaints constitutes substantial evidence in support of an ALJ's adverse

16   credibility determination).

17       Here, the ALJ summarized Plaintiff's subjective complaints and found them

18   "not entirely consistent with the medical evidence." (AR 20.) The ALJ then

19   summarized the medical evidence, noting the following:

20       Plaintiff was diagnosed with degenerative disc disease of the lumbar and

21   cervical spine. (AR 358, 360, 411, 454-455, 477.) In February 2016, Plaintiff was

22   evaluated by Jonathan Allen, M.D., an orthopedic surgeon. She complained of low

23   back pain radiating down her legs. Treatment notes indicate that Plaintiff ambulated

24   without an assistive device with a normal heel to toe gait. She had moderate difficulty

25   transferring from the chair to standing and from standing to the exam table, and

26   tenderness to palpation in the back. The remainder of the findings were unremarkable

27   – for example, Plaintiff had full range of motion, her motor function was normal,

28
_____

[4] The Court notes that Plaintiff's reply does not address the Commissioner's argument.

1   sensation was intact, reflexes were normal, and straight leg raising was negative.

2   Plaintiff was diagnosed with degenerative disc disease at L5-S1 with bilateral lower

3   extremity symptoms. Dr. Allen noted that Plaintiff had not attempted any

4   conservative care, and recommended oral medication and physical therapy. (AR 452-

5   455.)

6           In April 2017, Plaintiff complained of chronic neck pain as well as pain in the

7   right leg and foot. Diagnostic tests were ordered, and Plaintiff was referred to

8   physical therapy. (AR 411-412.) An x-ray of Plaintiff's lumbar spine showed mild

9   lumbar degenerative joint disease, minimal facet arthropathy and minimal

10  osteophytosis developing. (AR 477.) An x-ray of Plaintiff's cervical spine revealed

11  the intervertebral disc spaces were normally maintained, vertebral body heights were

12  well maintained, and there was no acute osseous injury. (AR 478.)

13          On June 14, 2017, Plaintiff again complained of low back pain radiating to the

14  right leg with tingling/numbness. She was diagnosed with lower back pain and

15  treated with a Toradol injection. During the visit, Plaintiff reported that she had been

16  receiving physical therapy for two months, and it was helping. (AR 359.)

17          Plaintiff complained of leg pain on June 19, 2017, but a physical examination

18  was within normal limits. (AR 409.) The x-ray of bilateral knees taken on June 21,

19  2017 were negative. (AR 461.)

20          The next progress notes are dated February 2018. During an exam, Plaintiff

21  showed lumbar spine pain with motion. (AR 405.) X-rays of the lumbar spine were

22  taken and showed mild diffuse degenerative disc disease, but no spondylolisthesis,

23  and Plaintiff's sacroiliac joints were normal. (AR 421.) An x-ray of Plaintiff's right

24  knee in April 2018 was unremarkable. (AR 418.)  In June 2018, Plaintiff complained

25  of right hip and leg pain. Examination was unremarkable. (AR 402.) Bilateral knee

26  x-ray from August 2018 showed no acute fractures, no significant joint effusions,

27  unremarkable soft tissues, and no acute osseous injury. (AR 414.) An x-ray of

28  Plaintiff's right hip taken the same date showed some mild degenerative joint disease

1    "just beginning." (AR 415.)

2         Based upon her complaints of lower extremity pain, an ultrasound of Plaintiff's

3    bilateral legs was performed in September 2018. The results showed no evidence of

4    deep vein thrombosis. (AR 413.)

5         The ALJ observed that despite the negative findings in the diagnostic x-rays

6    of Plaintiff's knees, in 2018, a physical therapist assessed Plaintiff with osteoarthritis

7    in the knees. It appears that the assessment was based upon Plaintiff's statements.

8    (AR 527-529.)[5]

9         With regard to Plaintiff's depression and anxiety, the ALJ noted that Plaintiff

10   had been diagnosed with, and treated for, depression and anxiety. In May 2017,

11   Plaintiff reported that she had been taking medication for depression for the past year

12   and it helped a little. She complained of poor concentration, insomnia, sadness, poor

13   memory, nightmares, poor appetite, anhedonia, lack of libido, and panic attacks.

14   Plaintiff's dosage of Zoloft was increased, and she was additionally prescribed

15   Abilify and Xanax. (AR 281-285.)

16        At a follow-up appointment in June 2017, Plaintiff reported feeling better, her

17   symptoms had improved and were fairly controlled. She denied depressed mood or

18   difficulty staying asleep. Based upon residual symptoms, her Zoloft dosage was

19   increased. (AR 286-287.) In July 2017, Plaintiff "present[ed] with excessive worry,

20   but denie[d] difficulty falling asleep, difficulty staying asleep, diminished interests

21   or pleasure, fatigue, paranoia, poor judgment, racing thoughts, restlessness of

22   thoughts of death or suicide." (AR 288-289.) In October 2017, Plaintiff reported

23   doing okay except increased stress due to discord between her son and his girlfriend.

24   She wanted to decrease her medications, complaining that they were "too heavy" or

25

26   [5] The Court notes that Plaintiff underwent a rheumatology consultation in July 2017. Amro
     Elbalkhi, M.D., diagnosed Plaintiff with lumbar spine degenerative disk disease and positive
27   rheumatoid factor without evidence of rheumatoid arthritis. Dr. Elbalkhi advised Plaintiff to
     continue physical therapy. He also offered Plaintiff trigger point injections for her lower back, but
28   she declined. (AR 429.)

1    sedating. Her medications were adjusted. (AR 290-293.) In December 2017, Plaintiff

2    was doing okay overall, her sleep was better, and she denied side effects from her

3    medications. She reported "family situations" were causing distress. Her medications

4    remained the same. (AR 294-296.) In April 2018, Plaintiff reported that she had run

5    out of medication and was feeling depressed. She wanted medicine to help with

6    intermittent insomnia. She reported ongoing marital discord. Her mental status

7    examination was normal with the exception of a depressed anxious mood and

8    constructed affect. She was prescribed Trazodone at bedtime, but her Zoloft

9    prescription remained unaltered. (AR 298-302.) Plaintiff reported her mood was a bit

10   better in June 2018, but she experienced "ongoing stress from being rejected by

11   disability." Her medications were adjusted. (AR 303-306.) In July and August 2018,

12   Plaintiff's mood and sleep were okay, and her mood was stable. She reported

13   occasional depression resulting from situations with her family. In July 2018, her

14   mental status examinations were unremarkable with the exception of a mildly

15   impaired ability to make reasonable decisions and depressive thought content. (AR

16   445-448.) In August 2018, Plaintiff's mental status examination was unremarkable

17   with the exception of a moderately impaired ability to make reasonable decisions.

18   (AR 440-444.) In September 2018, Plaintiff's mood was better and stable, her sleep

19   was okay, but she reported "depression resulting from situations with family." Her

20   mental status examination revealed Plaintiff's mood was euthymic, her affect was

21   full, her speech was clear, her thought process was logical, and her perception,

22   cognition, insight, and judgment were all within normal limits. Her medication was

23   continued with a slight adjustment in dosage. (AR 435-439.)

24        As set forth above, the objective medical evidence related to Plaintiff's

25   physical impairments reveals only mild degenerative disc disease. The other clinical

26   evidence consisted of normal findings. Similarly, the medical evidence related to

27   Plaintiff's mental impairments contains a few mild positive findings in mental status

28   examinations. Moreover, notwithstanding the limited medical evidence, the ALJ

1    restricted Plaintiff to a restricted range of light work and simple, routine tasks with

2    only occasional interaction with supervisors, coworkers and the public. In light of the

3    foregoing record, the ALJ properly relied upon the absence of objective medical

4    evidence as one factor in her decision to discount Plaintiff's subjective complaints to

5    the extent they exceeded the limitations incorporated in the RFC.

6                    Evidence of sporadic, conservative treatment

7              An ALJ may properly rely upon infrequent and/or conservative treatment as a

8    reason for discounting a claimant's subjective complaints. *See Molina v. Astrue*, 674

9    F.3d 1104, 1113 (9th Cir. 2012); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007);

10   *see* SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective

11   statements where "the frequency or extent of the treatment sought by an individual

12   is not comparable with the degree of the individual's subjective complaints, or if the

13   individual fails to follow prescribed treatment that might improve symptoms....").

14             In addressing Plaintiff's back impairment, the ALJ here found that the record

15   showed "sporadic medical treatment" which she found inconsistent with Plaintiff's

16   symptoms being as limiting as she alleged. The ALJ also noted that Plaintiff's

17   physicians treated her with medication and referrals to physical therapy, and on one

18   occasion, a Toradol injection. (AR 20.) The ALJ's characterization of Plaintiff's

19   treatment as sporadic and conservative is supported by substantial evidence.

20             As set forth above, the record shows that after Plaintiff sought treatment for

21   her back in February 2016, and her next treatment was not until April 2017, more

22   than a year later. Then, after obtaining x-rays in June 2017, Plaintiff next sought

23   treatment for her back in February 2018, more than seven months later. The fact that

24   Plaintiff infrequently sought treatment for her back impairment reasonably suggests

25   that her pain was not as severe as alleged. *See Giovannini v. Berryhill*, 2018 WL

26   1588714, at *5 (C.D. Cal. Mar. 28, 2018) ("ALJ properly gave less weight to

27   plaintiff's subjective statements based on plaintiff's failure to seek a frequency of

28   medical treatment that was consistent with the alleged severity of plaintiff's

1  subjective symptoms.").

2  The record also shows that Plaintiff's treatment consisted of medication –

3  namely, Naproxen and Tramadol (*see* AR 186, 361, 369, 372, 509, 560-561)[6] –

4  physical therapy referrals, and an injection. The ALJ could fairly characterize this

5  treatment as conservative. *See Miner v. Colvin*, 609 F. App'x 454, 455 (9th Cir. 2015)

6  (ALJ properly relied upon conservative treatment to discount claimant's subjective

7  complaints where "despite [claimant's] allegations that she suffered disabling pain

8  for years, [claimant's] doctors did not recommend surgeries or other aggressive

9  treatments."); *Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017)

10  ("[T]he fact that Plaintiff has been prescribed narcotic medication or received

11  injections does not negate the reasonableness of the ALJ's finding that Plaintiff's

12  treatment as a whole was conservative, particularly when undertaken in addition to

13  other, less invasive treatment methods."); *Zaldana v. Colvin*, 2014 WL 4929023, at

14  *2 (C.D. Cal. Oct. 1, 2014) (a treatment regimen including Tramadol and "multiple

15  steroid injections" was conservative); *see also Huizar v. Comm'r of Social Sec.,* 428

16  F. App'x 678, 680 (9th Cir. 2011) (ALJ properly discounted subjective complaints

17  where claimant responded favorably to conservative treatment, which included "the

18  use of narcotic/opiate pain medications").

19  Accordingly, the ALJ properly relied upon Plaintiff's infrequent and

20  conservative treatment to discount Plaintiff's allegations of disabling pain.

21  Evidence that symptoms were effectively treated

22  The effectiveness of treatment is a relevant factor in determining the severity

23  of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Tommasetti v. Astrue*, 533

24  F.3d 1035, 1039-1040 (9th Cir. 2008); *Warre v. Comm'r of Soc. Sec. Admin.,* 439

25

---

26  [6] The Court notes that in August 2016, Plaintiff reported to the consultative examiner that she took
27  hydrocodone with acetaminophen. (AR 270.) While the record does not include evidence that
   Plaintiff was prescribed this medication, there is a notation from Plaintiff's June 2017 rheumatology
28  consultation indicating that Plaintiff reported that she had been prescribed Norco, but her primary
   care physician discontinued that medication. (AR 490.)

1    F.3d 1001, 1006 (9th Cir. 2006). Substantial evidence of effective treatment may

2    provide a specific, clear, and convincing reason to discount a claimant's subjective

3    symptom testimony. *See Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir.

4    2018).

5         Here, the ALJ found that while Plaintiff was diagnosed with depression and

6    anxiety, the evidence showed that "treatment has been generally successful in

7    controlling those symptoms." (AR 21.) As set forth above, the record reflects that

8    Plaintiff repeatedly reported feeling better and stable with her medication. (*See, e.g.,*

9    AR 286-287, 294-296, 435-439, 445-448.) On an occasion when Plaintiff reported

10   an increase in symptoms, it turned out that she had run out of medication. (AR 298-

11   302.) Based on the record, the ALJ's characterization of the record is supported by

12   substantial evidence. Accordingly, the ALJ properly gave less weight to Plaintiff's

13   subjective complaints to the extent treatment significantly alleviated Plaintiff's

14   symptoms. *See Bailey v. Colvin*, 659 F. App'x 413, 415 (9th Cir. 2016) (evidence

15   that "impairments had been alleviated by effective medical treatment," to the extent

16   inconsistent with "alleged total disability[,]" specific, clear, and convincing reason

17   for discounting subjective complaints); *Giovannini*, 2018 WL 1588714, at *5 (ALJ

18   properly discounted subjective complaints because there was "some evidence that

19   plaintiff's medications '[had] been relatively effective in controlling the [plaintiff's]

20   symptoms.'") (alterations in original).

21        Daily activities

22        An ALJ may discredit testimony when a claimant reports participation in

23   everyday activities indicating capacities that are transferable to a work setting.

24   *Molina*, 674 F.3d at 1113. In addition, "[e]ngaging in daily activities that are

25   incompatible with the severity of symptoms alleged can support an adverse

26   credibility determination." *Ghanim*, 763 F.3d at 1165. Nevertheless, the Ninth Circuit

27   has made clear that "ALJs must be especially cautious in concluding that daily

28   activities are inconsistent with testimony about pain, because impairments that would

1  unquestionably preclude work and all the pressures of a workplace environment will

2  often be consistent with doing more than merely resting in bed all day." *Garrison*,

3  759 F.3d at 1016. "[T]he mere fact that a plaintiff has carried on certain daily

4  activities, such as grocery shopping, driving a car, or limited walking for exercise,

5  does not in any way detract from her credibility as to overall disability." *Vertigan v.*

6  *Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Furthermore, an ALJ should explain

7  "*which* daily activities conflicted with *which* part of [a] Claimant's testimony." *See*

8  *Burrell*, 775 F.3d at 1138.

9      Here, the ALJ observed that Plaintiff was able to shower, run errands, drive

10  short distances, shop, cook, and go places by herself. Plaintiff's daughter also

11  reported that Plaintiff prepared simple meals, performed household chores, goes out

12  three to four times a day, drives, shops, socializes, reads, and watches television. The

13  ALJ found that Plaintiff's "ability to participate in such activities undermines the

14  consistency of [her] allegations of disabling functional limitations." (AR 22.)

15      The Commissioner argues that, "[w]hile Plaintiff's activities were somewhat

16  limited, the Ninth Circuit provides that an ALJ may consider 'whether the claimant

17  engages in daily activities inconsistent with the alleged symptoms.'" (ECF No. 21 at

18  7, citing *Molina*, 674 F.3d at 1112.) However, neither the ALJ nor the Commissioner

19  identify any specific activity or explain how it was inconsistent with any of Plaintiff's

20  allegations. The ALJ's recitation of Plaintiff's daily activities in their entirety,

21  without any explanation of which activity she considered to be inconsistent with

22  which of Plaintiff's alleged symptom or limitation is insufficient to meet the Ninth

23  Circuit's "requirements of specificity." *Burrell*, 775 F.3d at 1138 (quoting *Connett*

24  *v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003); *see generally Smolen v. Chater*, 80

25  F.3d 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that

26  claimants be utterly incapacitated to be eligible for benefits, and many home

27  activities may not be easily transferable to a work environment where it might be

28  impossible to rest periodically or take medication.") (citation omitted).

1    Although the ALJ's lack of specificity renders reliance upon Plaintiff's daily

2    activities improper, that error is harmless in light of the other sufficiently clear and

3    convincing reasons supporting the ALJ's credibility determination. *See Bray v.*

4    *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (where the ALJ

5    presented four other independent proper bases for discounting the plaintiff's

6    testimony, reliance on claimant's continued smoking to discredit her, even if

7    erroneous, amounted to harmless error); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

8    F.3d 1155, 1163 (9th Cir. 2008) (ALJ's error in relying on claimant's receipt of

9    unemployment benefits and on relatively conservative pain treatment regime was

10   harmless where ALJ provided other specific and legitimate reasons for finding

11   claimant's testimony incredible).

12        Failure to participate in physical therapy

13        The Commissioner points out that the ALJ also found it significant that

14   Plaintiff was referred to physical therapy on three occasions – in March 2016, April

15   2017, and October 2018 – but she testified that she only began participating in

16   physical therapy three weeks prior to the hearing. (ECF No. 21 at 6; AR 21.) It is true

17   that an ALJ may consider failure to "seek treatment or to follow a prescribed course

18   of treatment" in assessing credibility. *See Smolen*, 80 F.3d at 1284. Nevertheless, the

19   record here does not entirely support the ALJ's conclusion. Not only were the

20   questions posed at the hearing somewhat confusing, but fairly read, Plaintiff testified

21   that she had participated in physical therapy on an occasion before her then-current

22   physical therapy. (*See* AR 38-39.) Indeed, as the ALJ stated in her decision, the

23   record includes a notation indicating that Plaintiff had participated in physical

24   therapy in the two months prior to June 2017. (AR 359.) In any event, because the

25   ALJ provided other legitimate reasons for her credibility determination, any error in

26   relying on the failure to follow through with physical therapy was harmless. *See*

27   *Carmickle,* 533 F.3d at 1163.

28

1
**ORDER**

2      IT IS THEREFORE ORDERED that Judgment be entered affirming the

3   decision of the Commissioner of Social Security and dismissing this action with

4   prejudice.

5

6   DATED: 9/10/2020

7                                                    _____

8                                                        ALEXANDER F. MacKINNON
                                                         UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18